BENSIEK, Respondent, v. ST. LOUIS TRANSIT COMPANY and THE UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellants.

St. Louis Court of Appeals, May 14, 1907.

1. STREET RAILWAYS: Lessor and Lessee: Liability of Lessor for Torts of Lessee. The lessor of a street railway system, not engaged in the operation of the same, is not liable for the torts of the lessee who is engaged in such operation. [Following Moorshead v. United Railways, 119 Mo. App. 541.]

2. ———: Contributory Negligence: Jury Question. Where the driver of a vehicle, before driving upon a street railway track, looked and listened and could have seen a car at least eight hundred feet, but saw none, he was not, as a matter of

law, guilty of contributory negligence in driving four or five hundred feet further without looking back the second time so as to see a car which collided with his wagon from the rear.

3. ——: **Negligence of Motorman: Jury Question.** Where a street car approached from the rear and collided with a wagon which could have been seen a distance of three hundred feet, and where the car could have been stopped in from ninety to one hundred and twenty feet and could have been reduced to the speed of the wagon in forty-five feet, whether the motorman was negligent in failing to exercise ordinary care was a question for the jury.

4. ——: ——: **Last Chance.** In such case, although the driver was negligent in going upon the track and failing to use due care, this did not preclude a recovery for the damage caused by the rear end collision, where the motorman failed to exercise due care to prevent a collision after he saw, or by the exercise of ordinary care could have seen the danger, the prior negligence of the driver of the vehicle was remote and the subsequent negligence of the motorman was the proximate cause of the injury.

Appeal from St. Louis County Circuit Court.—*Hon. J. W. McElhinney,* Judge.

REVERSED IN PART AND AFFIRMED IN PART.

*Boyle & Priest, George W. Easley* and *Edward T. Miller* for appellants.

The demurrer to the evidence should have been sustained. McGauley v. Transit Co.; 179 Mo. 583; Reno v. Railway, 180 Mo. 469; Roenfeldt v. Railway, 180 Mo. 534; Theobald v. Transit Co., 191 Mo. 395; Zurfluh v. Railway, 46 Mo. App. 636; Cogan v. Railway, 101 Mo. App. 179. The first is, there was no evidence to show any connection of the United Railways Company with the railway line or car in question. R. S. 1899, sec. 1187; Eyre v. Jourdan, 111 Mo. 428; 1 Beach on Private Corporations, sec. 367; 3 Thompson on Corporations, sec. 588; Mr. Freeman's Note, 71 Am. Dec. 297; Arrowsmith v. Railroad, 57 Fed. 165; 2 Wood's Railway Law, sec. 490; Nellis on Street Sur-

face Railroads, p. 266, sec. 16; 2 Elliott on Railroads, p. 605, sec. 469. Plaintiff's instruction numbered 1 is erroneous and should not have been given. The third paragraph of the instruction is erroneous, because there is no evidence from which the jury could fairly find that the motorman saw, or could have seen, the wagon and team on the track in a position of peril in time to control the speed of the car and avoid the collision. Reno v. Railroad, 180 Mo. 469; Holwerson v. Railroad, 157 Mo. 216.

*Albert E. Hausman* for respondent; *Robert L. Shackelford* of counsel.

(1) Appellant contends that the driver was guilty of such negligence as precluded a recovery, and hence a demurrer to the evidence should have been sustained. The facts are that the driver waited at the lunch stand for a north-bound car to pass him; then he looked south along the track; seeing no car in sight he drove onto the track and continued north thereon for a distance of four hundred and seventy feet at a speed of five miles per hour — in other words he drove north on that track for fifty-five seconds, when he was struck from the rear. That this was not such negligence as would defeat a recovery in this action is shown by the cases of Morgan v. Railroad, 159 Mo. 262; Grocery Co. v. Railroad, 89 Mo. App. 391; Barrie v. Transit Co., 102 Mo. App. 92; Kolb v. Transit Co., 102 Mo. App. 143; Biscuit Co. v. Transit Co., 82 S. W. 288; Degel v. Transit Co., 101 Mo. App. 56; Moritz v. Transit Co., 102 Mo. App. 557; Dairy Co. v. Transit Co., 103 Mo. App. 90; Scullin v. Railroad, 82 S. W. 760; Woods v. Railroad, 86 S. W. 1082. (2) Again plaintiff's case is predicated upon the theory that defendant's motorman either saw, or by the exercise of ordinary care would have seen plaintiff's position of peril in time to have averted the injury by the exercise of ordinary care.

If there was evidence to sustain this hypothesis, then the rule as laid down in Klockenbrink v. Railroad, 172 Mo., is applicable.

NORTONI, J.—The suit is for damages to plaintiff's team, a wagon and harness, occasioned by the street car having collided therewith.    The petition is in proper form.   Its allegations support and the evidence tended to prove the following facts.   Plaintiff, who is the proprietor of a livery stable in the city of St. Louis, owned the team, wagon and harness mentioned, and the same were in charge of her driver, on the night in question.   He was seated in the front end of the wagon, driving the team north on south Broadway, toward the city, immediately outside the city limits in St. Louis county, when a street car, operated by the defendant St. Louis Transit Company, running at from twelve to fifteen miles per hour, from the south, collided with the rear end of the wagon, from which collision the wagon was demolished, one horse was killed, the other injured, and the harness practically destroyed.   The night was dark. · It had been raining and was then misting some.   The plaintiff's driver was returning from St. Rose Hospital in the county near the city limits, about 10:30 p. m.   He drove along the east side of south Broadway, a public thoroughfare, in which is located defendant's double car tracks, for probably five hundred feet, until he reached a point where the recent rains had washed gullies along the side thereof, rendering it unsafe for travel.   When he encountered the gullies, he drove on defendant's track occupied by its north-bound cars, which track was macadamized between the rails. Immediately before and while in the act of driving upon the track, he looked to the south and listened for an approaching car, and seeing none, continued to drive northward on the track at about five miles an hour, for a distance of four hundred and seventy feet, when a

north-bound car, running at from twelve to fifteen miles
an hour, collided with the rear end of the wagon caus-
ing the damage sued for. The team was white. The
wagon was what is termed an ordinary undertaker's
wagon. It was black and seems to have been a covered
wagon with a door in the rear end in which was a
window about twelve inches wide and two feet high,
and inside the wagon, immediately above the driver's
seat, was a double reflector bulls-eye lantern. This
lantern was lighted at the time. It reflected a white
light in the front to the northward, and a red light
about the size of a silver dollar, toward the south, dis-
cernible from the window in the rear. One witness tes-
tified this red light was noticeable three hundred feet,
and another noticed it at the time of the collision for
one hundred and fifty feet from the rear. A street
light was burning about forty feet north and five feet
east of the point of collision. The road and street car
track was straight for a distance of eight hundred feet
south, the direction from which the car approached.
After having looked and listened, and neither seeing
nor hearing a car, the plaintiff continued on the track
for four hundred and seventy feet, at five miles an
hour, or, as calculated, about one minute, and during
that interval, he did not look a second time for danger
prior to the collision. Defendant's tracks at the point
mentioned, incline to the northward slightly. The car
was equipped with air-brakes and also with other ap-
pliances for emergency stops. It contained no passen-
gers nor was it otherwise loaded. An expert motorman
testified it could have been stopped with the appliances
at hand, under the conditions then prevailing at the
point in question, with its air-brake, when running at
twelve miles per hour, in eighty-five to ninety feet; at
the same speed, by using the emergency appliances, it
could have been stopped in forty-five feet. At the rate
of fifteen miles per hour, it could have been stopped

by using the air-brake, in one hundred and twenty to one hundred and fifty feet, and by using the emergency appliances, in ninety-five feet. While running at twelve miles per hour, its speed could have been reduced to five miles an hour, that of the wagon, in twenty-five feet. At fifteen miles per hour, its speed could have been reduced to five miles an hour with the emergency appliances, in forty-five feet, and all with safety to the car and those on board. The car ran fifty or sixty feet north after colliding with the wagon before it was stopped. These are all the material facts as to the collision.

As said before, the car was under the actual control of the St. Louis Transit Company, by whom it was being operated. There was no evidence whatever connecting the defendant United Railways Company with the operation of the car. The case was tried on the theory that the United Railways Company owned the car and its liability was sought to be established on the principle of agency; that is to say, it was insisted the St. Louis Transit Company, the lessee, was the agent of the United Railways Company, the owner, and that the United Railways Company was liable as principal for the negligent act of its agent, operating its road, in support of which plaintiff introduced in evidence a written lease dated September 30, 1899, a copy of which may be found in Moorshead v. United Railways Co., 119 Mo. App. 541, 96 S. W. 261, whereby the United Railways Company, as owner, leased and demised its lines and cars with competent legislative authority so to do, to the St. Louis Transit Company, in consideration of certain reservations of rent and valuable considerations therein mentioned, for a term of forty years. This lease and no other evidence was introduced tending to connect the United Railways Company with the road, its management or its operation of the car.

Defendants introduced no evidence. The court de-

clined to direct a verdict for them and referred the issues to the jury under instructions.

1. The car was being operated solely by the St. Louis Transit Company, under a competent lease authorized by legislative authority, by virtue of which it was the lessee in possession of the car and tracks and not the partner or agent of the United Railways Company, and there being no evidence tending to show the United Railways Company was engaged in the operation of the car or participated in any manner in the negligent act of the Transit Company complained of, the learned trial judge erred in referring the case to the jury insofar as the United Railways Company was concerned. The lease mentioned and the identical question here presented, is set out and fully discussed by this court in Moorshead v. United Railways Company, 119 Mo. App. 541. That case has recently been affirmed by the Supreme Court In Banc, in 203 Mo. 121, 100 S. W. 611, and for the reasons given in the opinion of this court above cited, the judgment against the United Railways Company should be reversed.

2. It is urged the court should have directed a verdict for the defendant, St. Louis Transit Company, as well. We are not inclined to this view. The plaintiff's driver looked and listened for the car prior to going upon the track and neither saw nor heard one although the evidence shows he could have seen the car which was lighted, for at least eight hundred feet. He certainly cannot be declared negligent as a matter of law for not looking a second time within one minute thereafter, while driving four hundred and seventy feet northward, along the track, and if he could, it would be immaterial on the record here, for the entire case predicates and is prosecuted upon the last fair chance doctrine, which presupposes the injured party to have been negligent in the first instance, and fixes the liability upon the guilty party only for the last negligent

breach of duty operating proximately to the injury, when, by the exercise of ordinary care on its part, the injury could have been averted, notwithstanding the negligence of the plaintiff, which, in the first instance, placed him in a situation of peril. Now under this rule, it was the duty of the motorman to exercise ordinary care to discover the plaintiff driving upon the track (Walsh v. Railway, 81 Mo. 466), and in his situation of peril, and to have stopped or checked the car in as short a distance as possible, in the exercise of due care for the safety of those on board thereof, to the end that the injury might be averted, if possible. The evidence not only shows the track was straight for eight hundred feet, and plaintiff's team and wagon near the lamp forty feet away, but in addition, the red light gleaming from the window in the rear of the wagon could have been seen by the motorman had he been exercising ordinary care in looking for persons driving on the track for from one hundred and fifty to three hundred feet, and the car could have been stopped, at fifteen miles per hour, in from one hundred and twenty to one hundred and fifty feet with the air-brake; and with the emergency appliances, in ninety-five feet. Its speed could have been reduced to five miles, the same speed of the wagon, in forty-five feet, and this, too, with entire safety. Under these circumstances, it is obvious had the motorman exercised ordinary care as required, the collision might have been averted. The demurrer, by operation of law, admits the facts stated to be true and defendant placed no witnesses upon the stand, not even the motorman, to controvert them. These facts clearly tend to establish that even though the plaintiff were negligent, the injury resulted from the negligence of the motorman in failing to exercise ordinary care in the discharge of his duty in not looking for persons upon the track and that this last omission of care was the proximate cause of the injury. Now under all the

authorities with which we are familiar, the question of defendant St. Louis Transit Company's negligence, was properly referred to the jury.  [Barrie v. Transit Co., 119 Mo. App. 38, 96 S. W. 233; Barrie v. Transit Co., 102 Mo. App. 87, 76 S. W. 706; Klockenbrink v. Railway, 81 Mo. App. 351; Klockenbrink v. Railway, 172 Mo. 678, 72 S. W. 900.]

3.  At the instance of plaintiff, the court instructed as follows:

"The court instructs the jury that if they believe from the evidence that defendants operated the street car referred to by the witnesses in this cause, and that said car ran upon tracks laid in South Broadway, St. Louis county, and that said South Broadway was at the time of the collision mentioned in the evidence, a public highway open for travel.

"And further find that plaintiff's team and wagon were being driven in a northwardly direction on said track in said South Broadway on the night of the day of August 21, 1904; and further find that while plaintiff's team and wagon were being so driven, one of defendant's cars, in charge of and being operated by defendant's servants, coming and moving along said tracks in the same direction as plaintiff's team and wagon, ran into and against plaintiff's wagon from the rear, thereby killing one of the horses of said team, and injuring the other horse, and breaking said wagon and the harness thereto.

"And if you further believe from the evidence that the motorman in charge of defendant's car which struck plaintiff's wagon, saw plaintiff's wagon and team on the track and in a position of imminent peril, or by the exercise of ordinary care would have seen plaintiff's wagon and team on said track and in such position of imminent peril, in time to have controlled the speed of said car and avoided the collision by the exercise

of ordinary care with the means and appliances at hand, and that the said motorman, nevertheless, negligently permitted said car to run onto and against said plaintiff's wagon, then your verdict must be for plaintiff."

Defendant St. Louis Transit Company complains of this instruction and argues that it did not require the jury to find the plaintiff was exercising ordinary care after going upon the track and before the collision. Indeed it is true no such condition is imposed thereby for the reason the proof did not call for it. Now it is certain, even though the driver was negligent, a recovery is not precluded by this fact if the negligence of the motorman was subsequent thereto and was the proximate cause of the injury, for in such cases the law overlooks the plaintiff's negligence which is remote, and determines the matter with reference to the proximate cause of the injury. It is the last omission of duty contributing proximately to the injury which determines the liability or non-liability therefor. [Beach on Cont. Neg. (3 Ed.), secs. 54, 201; Barrie v. Transit Co., 119 Mo. App. 38.] Now there is no proof in the case from which a jury could infer plaintiff's negligence contributed or concurred proximately to the injury, after defendant either saw, or by the exercise of ordinary care, could have seen his situation of peril. Plaintiff's driver may have been negligent in being upon the track, but in this situation, the question of due care on his part could only become material under the doctrine of the last clear chance, after defendant saw, or by the exercise of ordinary care might have seen plaintiff's danger; for, of course, had he been guilty of any act of negligence after the defendant either saw or by the exercise of ordinary care might have seen, his situation of peril, and this act of neglect on his part operated proximately to the injury, then his neglect and not that of the defendant would have been

the proximate cause.   As the proof stands, however, no negligent act of the driver appears to have intervened after that of defendant and therefore defendant's act was the last and proximate breach of duty.   In this view of the case, the instruction was proper enough on the facts in proof, for while no other breach of ordinary care than that of defendant was submitted to the jury thereby, there is nothing in the evidence from which a breach on the part of plaintiff, subsequent to that of defendant, appears for the jury to pass upon.

For the reasons given, the judgment will be reversed as to the defendant, United Railways Company, and affirmed as to the St. Louis Transit Company.   It is so ordered.   *Bland, P. J.,* and *Goode, J.,* concur.